## Flynn *v.* Philadelphia, Appellant.

*Municipal contract—Damages—Responsibility for injuries to property.*

Where a municipal contract provides that the contractor shall indemnify the city against any suits for damages or injuries received or sustained by any party or parties by or from the contractor, his agents or servants in performance of the work under the agreement, and that certain moneys shall be retained by the city until " all such suits or claims shall have been settled," and the contract also stipulates that the city shall provide the contractors a width of right of way sufficient for construction, and shall be responsible for the payment of damages for such right of way, the city cannot retain the amount of damages awarded to property owners for injuries to property which resulted from the work done, but without negligence on the part of the contractors.

Argued April 2, 1901.    Appeal, No. 307, Jan. T., 1900, by defendant, from order of C. P. No. 3, Phila. Co., Dec. T., 1898, No. 401, dismissing exceptions to report of referee in case of Patrick H. Flynn et al., trading as P. H. Flynn & Company v. City of Philadelphia.    Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ.    Affirmed.

Exceptions to report of J. Willis Martin, Esq., referee.

The facts appear by the opinion of McCarthy, J., which was in part as follows :

On September 18, 1896, the plaintiffs entered into a written contract with the defendant by which 'they agreed to furnish and deliver the materials and perform the work and labor required on the construction of retaining walls and reconstruction of buildings and other work in a certain portion of the subway constructed along Pennsylvania avenue, for the purpose of abolishing grade crossings of the city streets over the tracks of the Philadelphia and Reading Railroad.    While the work under this contract was progressing, the lines and grades of Pennsylvania avenue having been revised so as to involve a change of grade and a widening on both sides of the avenue, between Eighteenth and Nineteenth streets—that portion of the highway embraced within the plaintiffs' contract—a road jury was appointed to assess damages to property occasioned by the change

of grade of Pennsylvania avenue. Before this jury a number of claimants—amongst them, Annie E. Stork—presented claims for damages to their respective properties, resulting not from the actual taking of the land, but from injuries consequent upon the construction of the retaining wall of the subway. The city notified the plaintiffs of the presentation of these claims. The jury awarded an aggregate of $10,115 to the claimants. The plaintiffs afterwards completed their work under the contract and sought a final settlement, but the director of public works retained the sum mentioned, asserting the right under the contract to do this until satisfactory evidence should be furnished him that the awards of the road jury had been settled. Plaintiffs thereupon brought this action to recover the amount so retained.

The awards of the road jury have not been settled. The city of Philadelphia took appeals therefrom, some of which are still pending. In the matter of the appeal from the award to Annie E. Stork, the case was tried in court of common pleas No. 4, of this county, and a verdict and judgment rendered for the claimant, from which the city appealed. The Supreme Court, Mr. Justice MITCHELL delivering the opinion, sustained the city's appeal and reversed the judgment. The ground of reversal is that " the injury complained of was not the necessary consequence of the improvement authorized and undertaken by the city." " The liability declared upon, therefore, arose if at all from negligence, and could not be enforced in this form of proceeding: " Stork v. Philadelphia, 195 Pa. 101, 108.

When the learned referee made his original report this case was still pending and undetermined. He finds that the awards made by the jury of view were a part of the compensation to which property owners were entitled for the right of way taken by the city under the right of eminent domain. In the light of Stork's case, however, this position is not maintainable, and so much of the report must be amended in conformity with the decision in that case. By his supplemental report the learned referee answers the two questions submitted to him by reporting that there was no evidence presented which warranted a finding that the damage to the properties arose from the negligence of the contractors, and by finding as a fact that the damage was the result of the work done by the contractors, although without negligence on their part. By his original report, the

learned referee found as a fact that "there was no evidence of-
fered before the referee to prove that the work under the con-
tract was not performed according to its terms in the ordinary
and customary manner under the immediate supervision of the
director of the department of public works and his authorized
assistants and in accordance with the instructions of the city's
chief engineer or his authorized assistant, and there was no proof
of negligence on the part of the plaintiffs or their agents."

The case presented on this record is therefore the following:

The plaintiffs have fully and satisfactorily performed their
contract in accordance with its terms; they have not been
guilty of any negligence while performing it; the work was
performed under the immediate supervision and in accordance
with the instructions of the city's chosen officials; it conformed
strictly with the plans furnished by the city; certain properties
have sustained damage as a result of the work done under the
contract, but not as a result of negligence on the part of the
contractors; the owners of these damaged properties have
brought suit against the defendant for compensation for their
injuries.

Under these circumstances, has the city a right to withhold
the moneys of the contractors until the claims are settled?

The only part of the contract in relation to withholding
money is section 12 of the specifications, which is entitled
"Suits and Claims," and provides: "The contractor agrees to
indemnify and save harmless the city of Philadelphia and the
director of the department of public works and his assistants
from all suits or actions of every name and description brought
against them or either of them for or on account of use of pat-
ented rights, and any damages or injuries received or sustained
by any party or parties by or from the contractors, his agents
or servants in performance of the work under this agreement.
The contractor further agrees that all or so much of the moneys
due to him under this agreement as shall or may be considered
necessary by the director of the department of public works,
shall or may be retained by him until all such suits or claims
shall have been settled, and evidence to that effect furnished
to his satisfaction."

It is quite elementary law that the meaning of an instrument
is to be gathered from the whole of it and not from isolated

parts, and it has settled into a maxim that the intention of the parties will not be reached by a too strict adherence to the letter of the text, for " Qui haeret in litera haeret in cortice." In interpreting the section of the specifications above quoted, there must also be considered section 32, " Supervision," and section 37, " Orders and Instructions." These two sections read as follows :

" Section 32. The work shall be at all times under the immediate supervision of the director of the department of public works, and of his authorized assistants, who shall have free access and every facility at all times afforded for inspection."

" Section 37. The contractor must strictly follow without delay all orders and instructions from the chief engineer or his authorized assistants in the prosecution and completion of the work and every part thereof."

It is apparent by these sections that the city reserved the power to control the manner in which the work and every part of it should be performed.

Bearing this significant fact in mind, the provision in the 12th section of the specifications descriptive of the suits or actions against which the contractor agrees to indemnify the city, cannot be construed to mean suits for all damages or injuries without exception received or sustained by any one in the performance of the work, as is maintained on the part of the defendant. Even a literal interpreration of the language, broad as it is, will not bear this construction, for, if the section were intended to be so all-embracing in its scope, the words " by or from the contractors, his agents or servants " would have been omitted : a purpose to include all such damages or injuries without exception being completely expressed without them. Those words are used to limit the universality of the provision and to confine it to those cases where the damage or injury is given or inflicted " by or from the contractors, his agents or servants, in performance of the work," that is to say, where through unskilfulness or carelessness or negligence or disobedience of orders the responsibility for the damage or injury rests fairly and properly with the contractor. This is the evident meaning of the contracting parties : to hold that it was their intention, by these clauses of the contracts, to bind the contractor to strictly follow, without delay, all orders or in-

structions from the city's engineers, and yet to take upon himself the consequences of all the mistakes, errors and negligences of which those officials might be guilty, consequences which might result in a total of damages exceeding many times over the entire value of the contract, would be to make an interpretation repugnant to reason and to natural justice.

At the argument attention was called to section 13 of the specifications, entitled "Responsibility for risks and damages," in which the contractor is required to assume responsibility "for loss or injury to persons or property arising out of the nature of the work," that is, as it is argued, in the very cause found by the supplemental report of the referee. In my judgment, however, this section affords no aid whatever in deciding the question before me, first, because section 12 is the only section having reference to the retention of moneys, and if the matters specified in section 13 had any connection with those mentioned in section 12, they would have been incorporated therewith and not embodied in a distinct section; second, because, as already stated, interpretation cannot be safely made upon a phrase, a part of one general sentence isolated from its context and taken with absolute adherence to the letter; third, because the section, taken in connection with the other sections herein quoted, clearly refers to such matters and occurrences only as are casual, accidental and unusual in character. Reference to this section, therefore, is only made to prevent a possible inference that it has been overlooked or forgotten in considering the question at issue.

The exceptions are dismissed, the original and supplemental reports of the referee, as modified in accordance with the opinion of the Supreme Court in Stork v. The City, cited supra, are confirmed, and now, September 17, 1900, judgment is entered in favor of the plaintiffs and against the defendant for the sum of $10,115, together with lawful interest thereon, computed from November 1, 1898, to the date of the entry of this judgment, to wit: for the sum of $11,306.87, with costs to follow the judgment, except that one half of the fee of the referee is to be paid by the plaintiffs in accordance with the stipulation of the agreement of reference heretofore filed in this cause.

*Errors assigned* were in dismissing exceptions to report of referee.

*Francis L. Wayland,* assistant city solicitor, with him *John H. Maurer* and *John L. Kinsey,* city solicitor, for appellant.

*Frank P. Prichard,* for appellee.

PER CURIAM, May 27, 1901:

In the original and supplemental reports of the learned referee, and in the opinion filed by the learned judge of the court below, there appears a complete and convincing answer to the city's contention respecting the obligation and the duty of the contractor. It was made clear by the reports and the opinion referred to that the city's resistance to the payment of the claim of the plaintiffs was not warranted by any satisfactory evidence in the case. The judgment entered in favor of the plaintiffs and against the defendant, together with lawful interest thereon from November 1, 1898, to the date of the entry of the judgment, amounted to $11,306.87, less one half of the fee of the referee to be paid by the plaintiffs in accordance with the stipulation of the agreement of reference. We therefore affirm the judgment and dismiss the specifications of error.

Judgment affirmed.